**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ABIMBOLA KASUMU,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES ET AL.,<br><br>Defendants. | * * * * * * | Civil No. 25-3511-BAH |

* * * * * * * * * * * * *

## MEMORANDUM OPINION

Plaintiff Abimbola Kasumu ("Plaintiff") brings this lawsuit "as Next Friend of her minor children" against United States Citizenship and Immigration Services ("USCIS"), Joseph B. Edlow, Director of USCIS ("Edlow"), Markwayne Mullin, Secretary of Homeland Security ("Mullin"), Todd Blanche, Attorney General of the United States ("Blanche"),[1] and Kelly O. Hayes, U.S. Attorney for the District of Maryland ("Hayes") (collectively "Defendants"), asserting multiple claims arising out of the alleged undue delay in the adjudication of her children's immigration applications. ECF 1 (complaint). Pending before the Court is Defendants' motion to dismiss, or in the alternative, for summary judgment, ECF 13 ("motion to dismiss"), as well as Plaintiff's motion to seal, ECF 18. Plaintiff filed a response in opposition to Defendants' motion to dismiss, ECF 15, to which Defendants filed a reply, ECF 16.[2] The Court has reviewed all relevant filings and finds that no hearing is

[1] Plaintiff originally named Kristi Noem, Secretary of Homeland Security, and Pam Bondi, Attorney General of the United States, as defendants, but since they have both "cease[d] to hold office while the action is pending," their successors are automatically substituted as parties to this lawsuit pursuant to Federal Rule of Civil Procedure 25(d).

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons stated below, the motion to dismiss, ECF 13, is GRANTED, and the motion to seal, ECF 18, is DENIED IN PART AND GRANTED IN PART.

## I. BACKGROUND

### A. Factual Allegations

Plaintiff, a lawful permanent resident, received her residency in May 2025 based on her self-petition under the Violence Against Women Act ("VAWA").[3] ECF 1, at 2 ¶ 4. Her minor children, M.K. and O.K., are eligible to seek lawful permanent residency as derivative beneficiaries on Plaintiff's VAWA self-petition. *Id.* ¶ 6. To this end, Plaintiff alleges that she filed M.K. and O.K.'s applications for lawful permanent residency with USCIS in February 2025, using Form I-485.[4] *Id.* at 3 ¶ 9. The USCIS receipt date for these filings is March 3, 2025. ECF 15, at 3. Plaintiff alleges that she filed their applications several times before, but that each time she did so the filings were rejected or lost in the mail. ECF 1, at 3 ¶¶ 7–8; *see*

[3] The Court will treat the instant motion as a motion to dismiss, not a motion for summary judgment. These facts come from the complaint and are therefore assumed to be true at this stage of the case. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Throughout this opinion, the Court also references additional documents submitted by both parties for context and analysis but notes that its ultimate conclusion does not depend on any of the documents submitted or referenced.

[4] These are the applications at issue in this case. ECF 1, at 4 ¶ 18. The Court notes that Plaintiff is pro se and that, as a pro se individual, she is not permitted to represent her children before this Court under Federal Rule of Civil Procedure 11(a) and Local Rule 101.1.a. *See* Fed. R. Civ. P. 11(a) (requiring the "personal[]" signature of unrepresented parties); *see also* Loc. R. 101.1.a. (D. Md. 2025) ("Individuals who are parties in civil cases may only represent themselves."); *Moreland o/b/o T.D. v. Prince Georges Cnty. Dep't of Soc. Servs.*, Civ. No. PX-17-1640, 2017 WL 3066197, at *2 (D. Md. July 19, 2017) ("As a general rule, the 'vast majority' of federal courts do not permit parents, guardians, or next friends to represent a minor child in federal court. . . . Thus, [pro se plaintiff] may raise claims on her own behalf, but not on behalf of her minor child." (citing *Myers v. Loudoun Cnty. Pub. Schools*, 418 F.3d 395, 400–01 (4th Cir. 2005))). While that breach might provide alternative grounds for dismissal, it is not the ultimate reason for this case's dismissal. *See infra* Section III.A.2. (dismissing for failure to state a claim upon which relief can be granted).

*also* ECF 16-1, at 2 ¶¶ 4–15 (affidavit of Shapel Lee, acting Baltimore Field Office Director) (detailing USCIS records of Plaintiffs' prior filings on behalf of her children).

Plaintiff submitted a request to expedite adjudication of M.K.'s I-485 application in June 2025 "due to extreme financial hardship" resulting from M.K.'s inability to receive various forms of university financial aid "without proof of lawful immigration status." ECF 1, at 3 ¶ 10. Plaintiff alleges that despite multiple attempts to follow up she never received a decision from USCIS regarding this request. *Id.* ¶ 12. Plaintiff then "contacted Senator Angela Alsobrooks's office for assistance" in August 2025 but alleges that USCIS provided "inconsistent and inadequate responses" to Senator Alsobrooks's congressional inquiries. *Id.* ¶¶ 13–14. Plaintiff also submitted USCIS service requests contending that her children's applications are "outside normal processing time," to which USCIS responded with "generic, non-substantive replies, stating 'no response and final response.'" *Id.* ¶ 15.

Plaintiff contends that "USCIS has unreasonably delayed adjudication" of her children's applications and that this delay "is causing irreparable harm to the children's education, career, and well-being, contrary to the humanitarian intent of VAWA." *Id.* at 4 ¶¶ 18–19. She seeks relief under two federal statutes: 28 U.S.C. § 1361, governing petitions for writs of mandamus, and 5 U.S.C. § 706, the Administrative Procedure Act ("APA"). *Id.* at 2 ¶ 1. She seeks a writ of mandamus "compelling [USCIS] to immediately adjudicate" her children's pending I-485 applications, as well as an order declaring that USCIS's delay in adjudicating her children's applications violates the APA, and further ordering "USCIS to take all necessary steps to ensure the children's applications are processed without further delay." *Id.* at 4 ¶¶ 1–3.

**B. Procedural History**

On October 27, 2025, Plaintiff initiated this lawsuit by filing the complaint and petition for writ of mandamus. ECF 1. Defendants filed the instant motion to dismiss, seeking

dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), on February 22, 2026. ECF 13. Plaintiff filed her response in opposition on March 6, 2026, ECF 15, and Defendants replied on March 20, 2026, ECF 16. Plaintiff filed her motion to seal or redact personal information on June 23, 2026, ECF 18, to which Defendants have not filed a response.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a complaint for a lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction, and the plaintiff bears the burden of demonstrating that this Court has the authority to hear the case. *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 432 (4th Cir. 2014). In deciding whether a complaint alleges facts sufficient to support subject matter jurisdiction, the Court assumes the truthfulness of the facts alleged. *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009). "Motions to dismiss for lack of subject matter jurisdiction are properly granted where a claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)).

### B. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

**C. Motion to Seal**

Local Rule 105.11, which governs the sealing of all documents filed in the record, states in relevant part: "[a]ny motion seeking the sealing of pleadings, motions, exhibits or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection." Rule 105.11 balances the public's common law right to inspect and copy judicial records and documents, *see Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), with competing interests that sometimes outweigh the public's right, *see In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984). The common-law presumptive right of access can only be rebutted by showing that countervailing interests heavily outweigh the public interest in access. *Doe v. Pub. Citizen*, 749 F.3d 246, 265–66 (4th Cir. 2014). The public's right of access to dispositive motions and the exhibits filed within is protected to an even higher standard by the First Amendment. *See Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). The First Amendment's right of access "may be restricted only if closure is 'necessitated by a compelling government interest' and the denial of access is 'narrowly tailored to serve that interest.'" *Pub. Citizen*, 749 F.3d at 266 (citation omitted). "[S]ensitive medical or personal identification information may be sealed," but not

where "the scope of [the] request is too broad." *Rock v. McHugh*, 819 F. Supp. 2d 456, 475 (D. Md. 2011).

## III. ANALYSIS

The Court will first address the motion to dismiss and then the motion to seal. Because the motion to dismiss is granted, the Court need not address Defendants' alternative argument for summary judgment.

### A. Motion to Dismiss

#### 1. Rule 12(b)(1)

Defendants argue that the Court lacks subject matter jurisdiction over Plaintiff's petition for writ of mandamus because "Plaintiff does not have a clear right, nor does USCIS have a duty, to adjudicate I-485 applications within any certain timeframe." ECF 13-1, at 4. They contend that Plaintiff has not identified a "mandatory or ministerial obligation" giving rise to mandamus jurisdiction. *Id.* (quoting *In re First Fed. Sav. & Loan Ass'n of Durham*, 860 F.2d 135, 138 (4th Cir. 1988)). Plaintiff counters that she "does not seek to dictate the outcome of adjudication"—she seeks "only that USCIS act." ECF 15, at 6. The complaint will not be dismissed because Defendants owe Plaintiff a nondiscretionary duty to adjudicate the I-485 applications.

Although the statute governing applications for lawful permanent residency (also called "adjustment of status") grants the executive branch discretion in the ultimate decision to approve or deny the applications, *see* 8 U.S.C. § 1255(a), this Court has found that the statute's implementing regulations impose a nondiscretionary duty to *adjudicate* Form I-485 applications for adjustment of status. *See Saghafi v. Edlow*, Civ. No. GLR-26-100, 2026 WL 1127468, at *5 (D. Md. April 24, 2026) (collecting cases); *see also Sandoval v. Robinson*, No. 1:26CV00029, 2026 WL 1799692, at *6 (W.D. Va. June 23, 2026) (finding that "USCIS has a nondiscretionary duty to adjudicate the plaintiffs' I–130 petition and I–485 application").

Because this duty to adjudicate such applications imposes "a clear duty to act" upon USCIS, the Court has subject matter jurisdiction over Plaintiff's petition for writ of mandamus. *See Lovo v. Miller*, 107 F.4th 199, 216 (4th Cir. 2024) ("[T]he Mandamus Act only permits federal courts to exercise jurisdiction if an agency has a clear duty to act.").

2. Rule 12(b)(6)

Defendants also seek dismissal of this case pursuant to Rule 12(b)(6), arguing that Plaintiff has failed to state a claim under both the Mandamus Act and the APA. ECF 13-1, at 3, 5. Defendants first argue that they do not owe Plaintiff a nondiscretionary duty to adjudicate the I-485 applications, and that alone defeats Plaintiff's mandamus and APA claims. ECF 13-1, at 3–6. However, as analyzed *supra*, at Section III.A.1., that argument is unavailing. Defendants argue in the alternative that Plaintiff has not established that the delay in adjudication is unreasonable. ECF 13-1, at 7. Plaintiff argues to the contrary. ECF 15, at 6–8. Because the Court agrees that Plaintiff has not pled sufficient facts to demonstrate that the delay in adjudicating her children's application is unreasonable, the motion to dismiss is granted.

The Court first notes that both of Plaintiff's unreasonable delay claims—APA and mandamus—are subject to identical analysis. *See Kangarloo v. Pompeo*, 480 F. Supp. 3d 134, 142 (D.D.C. Aug. 7, 2020) ("The standard for undue delay under the Mandamus Act, however, is identical to the APA standard." (citing *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63–64 (2004))); *see also Yarmohammadi v. Rubio*, Civ. No. BAH-24-2952, 2025 WL 2043719, at *7 (D. Md. July 21, 2025). "The Supreme Court has not, so far, provided clear guidance on how to determine how long is too long to wait for an agency adjudication." *Gonzalez v. Cuccinelli*, 985 F.3d 357, 375 (4th Cir. 2021). In the absence of such guidance, "most lower courts have followed the D.C. Circuit's decision" in *Telecommunications Research & Action Ctr. v. FCC ("TRAC")*, 750 F.2d 70 (D.C. Cir. 1984), "which 'list[s] factors that are relevant

to determining whether agency action has been unreasonably delayed.'" *Id.* (quoting *Fed. Regulatory Comm'n v. Powhatan Energy Fund, LLC*, 949 F.3d 891, 903 (4th Cir. 2020)). These factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (internal citations and quotation marks omitted).

Moreover, while the Fourth Circuit has noted that "[a] claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage," *Gonzalez*, 985 F.3d at 375, district courts have routinely determined that they may still apply the *TRAC* factors to evaluate whether an unreasonable delay claim meets federal pleading standards. *See, e.g., Parva v. Blinken*, Civ. No. TDC-23-3287, 2024 WL 4042466, at *5 (D. Md. Sep. 4, 2024); *Arefi v. Rubio*, Civ. No. JRR-24-2031, 2026 WL 706593, at *7 (D. Md. Mar. 3, 2026); *Ishaq v. Schofer*, Civ. No. TJS-24-207, 2024 WL 3729107, at *6 (D. Md. Aug. 8, 2024); *Gah v. U.S. Dep't of Homeland Sec.*, Civ. No. JRR-25-898, 2026 WL 757299, at *6 (D. Md. Mar. 18, 2026). A court may find that a plaintiff has failed to state an unreasonable delay claim when the "*TRAC* factors weigh decisively in [Defendants'] favor." *Arefi*, 2026 WL 706593, at *7. This Court will follow suit and evaluate the sufficiency of this claim.

*i. The first and second TRAC factors weigh in favor of dismissal.*

The first two factors require courts to consider whether the agency processing time is "governed by a rule of reason." *TRAC*, 750 F.2d at 80. "Courts generally consider the first

and second *TRAC* factors together." *Jahangiri v. Blinken*, Civ. No. DKC-23-2722, 2024 WL 1656269, at *8 (D. Md. Apr. 17, 2024). Defendants contend that they employ a rule of reason in their adjudication of I-485 applications because they process these applications on a "first-in-first-out (FIFO)" basis, thereby giving longer-pending filings "higher priority." ECF 13-1, at 8. This Court has determined that "[w]ith respect to immigration applications, the FIFO method constitutes a rule of reason." *Mokuolu v. Mayorkas*, Civ. No. RDB-24-817, 2024 WL 4783542, at *6 (D. Md. Oct. 1, 2024) (first citing *N-N v. Mayorkas*, 540 F. Supp. 3d 240, 261 (E.D.N.Y. 2021), then citing *Gonzalez v. Cuccinelli*, 985 F.3d 357, 375 (4th Cir. 2021)); *see also Dhaubhadel v. Blinken*, Civ. No. MJM-24-1427, 2025 WL 958569, at *3 (D. Md. Mar. 31, 2025) (citations omitted).

Plaintiff argues that Defendants do not actually follow the FIFO method when adjudicating I-485 applications because she alleges to have identified cases that "were filed long after Plaintiff's children's filings and were adjudicated almost immediately." ECF 15, at 5; *see also* ECF 15-8 (screenshots of online posts purporting to show I-485 approvals within a few months or less). Defendants respond that "different field offices have different processing times, and it is not clear . . . what field office processed the various applications in Plaintiff's exhibit." ECF 16, at 3. Whatever weight these online posts may carry, the Court agrees that without evidence showing these cases were processed out of the same field office currently processing M.K. and O.K.'s applications—the Baltimore Field Office—they cannot show that Defendants fail to follow the FIFO method. As it stands, Plaintiff's children's applications are within the posted processing times for the Baltimore Field Office. *See Case Processing Times*, U.S. Citizenship and Immigration Services, https://egov.uscis.gov/processing-times (last

visited Sep. 8, 2026) (showing processing times for family-based I-485 applications in the Baltimore Field Office as 19 months for 80% of cases).[5]

Neither the statute nor its implementing regulations impose a timetable or deadline for USCIS's adjudication of I-485 applications. *See generally* 8 U.S.C. § 1255(a); 8 C.F.R. § 245.1 et seq. "Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak v. Pompeo*, No. 20-CV-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). While Plaintiff seeks to characterize the length of delay in her case as five years, the Court's consideration is limited to how long the discrete applications at issue have been pending—less than 19 months—not how long it has been since Plaintiff initially sought her children's adjustment of status through later-rejected filings. *See* ECF 15, at 6–7 (detailing earlier lost or rejected filings and claiming the delay on the current applications is therefore five years).

"Courts have routinely found that delays of months longer than Plaintiff[] ha[s] waited here—even upwards of years longer—are not unreasonable." *See Canaza v. Platek*, Civ. No. BAH-25-303, 2026 WL 811234, at *15 (D. Md. Mar. 24, 2026) (rejecting an unreasonable delay claim where applications had been pending for 26 months); *see also Ishaq*, 2024 WL 3729107, at *7 (collecting cases); *Parva*, 2024 WL 4042466, at *6 (same); *Mokuolu*, 2024 WL

---

[5] The Court notes that at the time the parties briefed this motion to dismiss, the USCIS processing times for the Baltimore Field Office were 13 months. ECF 13-2, at 1 ¶ 4. The posted processing times have since lengthened to 19 months, which keeps the applications at issue within the agency estimate when calculating from the USCIS receipt date. *See Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) ("[O]n a 12(b)(6) motion the court 'may properly take judicial notice of matters of public record.'" (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also* ECF 13-1, at 2 n.2 (noting that Plaintiff contends the applications were filed in February 2025, while USCIS records "show they were submitted on March 3, 2025"). While the Court must accept all of Plaintiff's factual allegations as true at this stage, Plaintiff's allegations are consistent with a receipt date of March 3, 2025—for instance, she could have mailed the applications in late February 2025, and USCIS could have then received and processed them on March 3, 2025. Additionally, this receipt date is reflected in her own filings with the Court. ECFs 4-1, 4-2. Since Plaintiff does not allege a more specific filing date than "February 2025" the Court will assume that USCIS received the applications on March 3, 2025, for the sake of this analysis.

4783542, at *7 ("This approximately 2.5-year processing delay falls within the category of delays that courts often deem reasonable."). Therefore, since Defendants employ a rule of reason and the length of delay in this case is not of the type that courts have found unreasonable, the first two factors weigh in favor of dismissal.

*ii. The third and fifth factors favor dismissal.*

"The third and fifth factors, human welfare and interests prejudiced, also tend to merge." *Canaza*, 2026 WL 811234, at *16 (citing *Jahangiri*, 2024 WL 1656269, at *11). Plaintiff alleges that her children are suffering harms such as loss of university financial aid, inability to register for university classes, and the inability to "participate in school related travels and internships," while their I-485 applications remain pending. ECF 1, at 3–4 ¶¶ 10–11, 16, 20–21. Defendants respond that this type of harm is not distinctive to Plaintiff and her children and is "likely experienced by other I-485 applicants waiting in line." ECF 13-1, at 10.

While these financial and educational concerns are no doubt pressing in the lives of Plaintiff and her children, they are not of the variety that courts have found to weigh in favor of a finding of undue delay. *See Canaza*, 2026 WL 811234, at *16 (finding these factors weighed in favor of plaintiffs where plaintiffs' ongoing family separation was exacerbated by "Plaintiff Doe's sexuality and the fears associated with how it could subject Plaintiff Doe to harm" in his country of origin); *see also Dhaubhadel*, 2025 WL 958569, at *4 (finding "the third and fifth *TRAC* factors to favor dismissal" where the plaintiff did "not face an imminent risk of removal" among other considerations). Plaintiffs here are not experiencing the stress of ordinary family separation, nor the exacerbating effect of concerns for their family member's safety in their country of origin.[6] ECF 1, at 3–4 ¶¶ 10, 20–21 (describing M.K. and O.K.'s lives in Maryland). Nor does Plaintiff allege that her children's I-485 applications must be

---

[6] Although plaintiff alleges that the delay in adjudication is impacting "safety and welfare," she does not detail any specific safety concerns her family is facing as a result of this delay. ECF 15, at 7.

adjudicated due to pending or imminent removal proceedings. *See generally* ECF 1. To the extent Plaintiff's arguments rely on "emotional harm" to herself or her children, ECF 15, at 8, although any attendant anxieties in the course of these proceedings are understandable, "courts have recognized that 'uncertainty and the inability to move forward with the normal course of life are inherent risks of engaging in the immigration process.'" *Belay v. Donis*, 799 F. Supp. 3d 493, 505–06 (E.D. Va. 2025) (quoting *Tikhonov v. Mayorkas*, No. 23-24572-CIV-LENARD, 2024 WL 4692146, at *6 (S.D. Fla. Nov. 6, 2024)). These factors therefore support dismissal.

*iii. The fourth factor supports dismissal.*

The fourth factor directs the Court to consider "the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. Plaintiff's only argument on this point is that she "is not seeking to jump a line," but rather is seeking "adjudication of cases pending since 2020." ECF 15, at 7. As noted *supra*, at Section III.A.2.ii., this characterization of her case's timeframe is unavailing. Defendants argue that finding for Plaintiff here would amount to merely "mov[ing] Plaintiff's children to the front of the line," thereby "caus[ing] other similarly situated applicants to wait longer for adjudication." ECF 13-1, at 11.

"Courts often find this factor to 'carr[y] the greatest weight' and have 'refused to grant relief, even [though] all the other factors considered in *TRAC* favored it, where a judicial order putting [the petitioner] at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain.'" *Jahangiri*, 2024 WL 1656269, at *11 (alterations in *Jahangiri*) (quoting *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020)). Because the Court agrees that granting Plaintiff the relief she seeks "would only 'shift[ ] the processing delay onto other petitioners without improving the agency's efficiency,'" this factor weighs in

favor of dismissal. *Dhaubhadel*, 2025 WL 958569, at *4 (quoting *Mokuolu*, 2024 WL 4783542, at *8).

iv. *The sixth TRAC factor is neutral.*

The sixth factor provides that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80. Neither party contends that there is impropriety on the part of the Defendants in this case. ECF 13-1, at 12; ECF 15, at 8. This factor is neutral and does not impact the above analysis. Because each factor weighs in favor of dismissal—aside from the present factor, which weighs neither for nor against dismissal—Plaintiff's claims are accordingly dismissed.

**B. Motion to Seal**

Plaintiff filed a motion to seal or redact personal information on June 23, 2025. ECF 18. Defendants have not filed a response in opposition. Plaintiff bases her request on her "reasonable fear, based on documented history of abuse[,] that her former spouse is attempting to locate her or monitor her whereabouts." ECF 18, at 1 (emphasis omitted). She also cites 8 U.S.C. § 1367 for the proposition that "[f]ederal law prohibits the disclosure of information relating to VAWA applicants." *Id.* She requests the Court to permit the redaction of her own and her children's personal identifying information, as well as that the Court seal any filings that "contain sensitive VAWA-protected information."[7] *Id.* at 2.

As an initial matter, this case is already subject to the heightened privacy protections of Federal Rule of Civil Procedure 5.2(c), since the case relates to immigration benefits. This means that for non-parties the availability of this case's docket online is limited to opinions and orders by the Court. Fed. R. Civ. P. 5.2(c)(2)(B). Any non-party seeking to view other

[7] Plaintiff's final two requests pertain to future filings which, since the motion to dismiss is granted, the Court will not address. ECF 18, at 2.

filings in this case would be required to come in person to the courthouse and view the case docket on a public terminal. Fed. R. Civ. P. 5.2(c)(2).

The Fourth Circuit requires courts adjudicating motions to seal to comply with these procedural steps:

> (1) provide public notice of the sealing request and a reasonable opportunity for the public to voice objections to the motion; (2) consider less drastic alternatives to closure; and (3) if it determines that full access is not necessary, it must state its reasons—with specific findings—supporting closure and its rejections of less drastic alternatives.

*Pub. Citizen*, 749 F.3d at 272 (citing *In re Knight Pub. Co.*, 743 F.2d 231, 234–35 (4th Cir. 1984)). The Court first notes that the motion to seal has been publicly docketed for longer than fourteen days. "Any interested party therefore has had sufficient time to seek intervention to contest any sealing order, but the docket reflects no such action." *Cochran v. Volvo Grp. N. Am., LLC*, 931 F. Supp. 2d 725, 728 (M.D.N.C. 2013). Accordingly, the Court concludes that the "public notice" requirement has been satisfied. *See Boone v. Bd. of Governors of Univ. of N. Carolina*, 395 F. Supp. 3d 657, 665 (M.D.N.C. 2019), *aff'd*, 858 F. App'x 622 (4th Cir. 2021); *see also* Loc. R. 105.11 (D. Md. 2025) ("The Court will not rule upon the motion [to seal] until at least fourteen (14) days after it is entered on the public docket to permit the filing of objections by interested parties.").

To the extent Plaintiff's request relies on the statutory confidentiality provisions at 8 U.S.C. § 1367, the Court notes that this provision does not bind the Judiciary, but rather restricts the actions of executive branch officials involved in adjudicating immigration claims. *See* 8 U.S.C. § 1367(a). Moreover, requests to seal an entire case are disfavored, and while Plaintiff has not made such a request, she also has not identified which filings "contain sensitive VAWA-related information" and should therefore, in her view, be sealed. ECF 18, at 2; *Windsor v. United States*, No. 1:23-cv-611 (RDA/IDD), 2023 WL 7646500, at *6 (E.D. Va.

Nov. 14, 2023) ("Granting Plaintiff's request to seal the entire case would severely infringe on the public's interest in access to court documents[.]").

Courts have granted motions to seal where the protected documents contain "intimately personal information" related to sexual assault, or medical records. *Borkowski v. Baltimore Cnty.*, 414 F. Supp. 3d 788, 822 (D. Md. 2019); *see also Taylor v. Wexford Health Sources, Inc.*, 737 F. Supp. 3d 357, 363–64 (S.D. W. Va. 2024). The materials Plaintiff seeks to seal contain neither intimately personal information—her underlying VAWA application is referenced only in a cursory manner—nor medical records. However, Plaintiff does raise a compelling safety concern for herself and her children, arguing that, in light of her history of experiencing domestic abuse at the hands of her former spouse, "[p]ublic access to Plaintiff's personal information, address, or immigration filings would place her and her minor children at risk." ECF 18, at 1; *Windsor*, 2023 WL 7646500, at *5 (denying motion to seal and reasoning that plaintiff, a VAWA recipient, did not "detail information regarding his children" in his filings, nor did he "explain how denying the Motion to Seal would jeopardize Plaintiff's or his children's safety under VAWA"). For those reasons, the Court concludes that the "drastic" measure of sealing the entire record is not warranted, *Pub. Citizen*, 749 F.3d at 272, but that the redaction of information such as Plaintiff's home address and the names of the schools which her children attend is appropriate due to Plaintiff's compelling safety concerns. *See Fortson v. Garrison Prop. & Cas. Ins. Co.*, No. 1:19-CV-294, 2022 WL 824802, at *4 (M.D.N.C. Mar. 18, 2022) (granting motion to seal plaintiff's address because "[t]he public does not need to know her address to understand the issues or the basis for any judicial decision and her privacy interests support sealing her address").

Certain portions of the record in this case will be provisionally sealed for twenty-one days pending Plaintiff's redaction. Plaintiff will be directed to file proposed redacted versions of the relevant documents. If she does not file a proposed redacted version of a filing within

twenty-one days, the provisional seal will end, and the filing will return to the public docket subject to the restrictions of Fed. R. Civ. P. 5.2.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**, and Plaintiffs' motion to seal is **DENIED IN PART** and **GRANTED IN PART**.

A separate implementing Order will issue.

Dated: September 18, 2026

/s/
Brendan A. Hurson
United States District Judge